## The American Union Express Co. *versus* Robinson.

1. Express companies undertake to deliver to the consignee, as common carriers by land did before railway companies came into general use.

2. In the ordinary railway transportation by common carriers of goods, there is no obligation after they reach their destination, but to put them safely in warehouses.

3. Express companies are ordinarily to be held to personal delivery, either to the residence or place of business of the consignee.

October 31st 1872.    Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Error to the Court of Common Pleas of *Armstrong county:* No. 160, to October and November Term 1872.

This action was commenced before a justice of the peace of Armstrong county, by William D. Robinson against The American Union Express Company, and on the 7th of March 1870 was removed by appeal from his judgment into the Court of Common Pleas. It was brought to recover the value of a demijohn of cherry brandy, lost, as was alleged, by the negligence of the defendants.

The case was tried, September 14th 1872, before Logan, P. J.

The plaintiff gave evidence that on the 20th of October 1869 he delivered a demijohn of cherry brandy at Parker's Landing, to Robert Miller, the express agent of the company who ran their line on the Allegheny Valley Railroad; it was addressed: " W. D. Robinson, Kittanning;" a receipt was asked for, but none was given; there was not much time till the train arrived; there was the same car for express and baggage.

The plaintiff having given evidence of the value of the brandy, rested.

The defendants gave evidence by Miller, their agent, that the demijohn was brought as the train was about starting, and he had not time to make out a bill and receipt, but directed those who brought it to put it on the train and the messenger could do it; it was given to the messenger on the train. The conditions in the receipts given are that articles of glass or contained in glass shall be received at the owner's risk. Witness never saw the demijohn whole afterwards; saw the pieces at the office in Kittanning; the pieces showed the glass was too thin to carry anything safely; the wicker-work bottom was off; the seal was unbroken, the tag, with directions, was on it; in the opinion of the witness the vessel was not fit to carry liquor of any kind.

" It is customary to deliver packages to those who reside in the town, or within a reasonable distance; it is done to draw patronage and for our own accommodation, but it is at the agent's option whether he delivers them at the office or their place of residence; we can take a receipt, either at their place of business or at the

office. We are directed not to deliver articles unless the charges are paid at the time of delivering to the consignee; if the agent delivers before the charges are paid, it is at his own risk.

" The express company's office is their place for receiving and delivering goods, &c., if delivered at residence or place of business it is a matter of accommodation. Goods are frequently delivered to parties before taken to the express office at the place of destination."

L. P. Croll testified: " I was defendant's agent at Kittanning in 1869; received a demijohn marked to plaintiff in October; took it down in wagon; set it in the office; the wicker-work was out of bottom when we got it out of car; handled it very carefully; think I drove slow down. It was not leaking when I got to office; nothing broken; got it to office at 3.15 P. M. I put it on the counter a few feet from end; I carried it in carefully and set it down on bottom. No dog or other animal in when I went out; nothing near that could interfere with it. Went to another train in 2½ or 3 hours; when I started out it was sitting there as sound as when I put it there; when I came back found it sitting up but liquor run out; when it was touched it fell all apart; seal was never touched. Know Miller's handwriting; tag didn't look like his handwriting. Had discovered it broken inside of three hours of getting package; hadn't gone out to deliver any at that time. Room locked up all the time I was away; had key in my pocket. Never could catch Mr. Robinson at home and had to lay out of freight."

The defendants then offered to prove their rules as to receiving goods, &c. The offer was objected to, rejected by the court and a bill of exceptions sealed.

There was evidence tending to show that the liquor was of such character that it might have broken the vessel by fermentation.

The court charged:—

" The defendants, the express company, are common carriers, as is conceded, and the first question for you is whether there was a delivery of the demijohn to defendants, to be carried for plaintiff to Kittanning. This is a question for you. To find this in the negative is an end of the case, and verdict should be for defendants. If found in the affirmative, you will next inquire whether the property was destroyed before delivery to consignee and whilst in charge of defendants, as carriers. If so, then there arises a presumption of fault, and without further explanation the plaintiff would be entitled to recover compensation in damages. Here it is first claimed that the demijohn, being in room of defendants, at Kittanning, was a delivery, and, therefore, defendants not liable otherwise than as warehousemen. There is no evidence in this case that would warrant you in finding this to be a delivery; neither proof of actual delivery nor notice of arrival.

" [Further than this, as to Express company, we think the sound rule to be a personal delivery, either to residence or place of business of consignee. If left for the convenience of carriers, in their room in the course of the transit, and for their own convenience, and before delivery or notice of arrival, it would seem to us they were liable as carriers, and we so instruct you.]

" There is no evidence tending to show a general usage or a consent of plaintiff to the goods remaining in the warehouse. Wherefore the liability of defendants as common carriers must be held to continue whilst the demijohn was in the house. Defendants being then common carriers and having charge of the demijohn as such, if you so find, and the property destroyed, also a question for you, whilst in their charge, has there been any showing under the evidence to release them from liability? It is claimed by defendants that the destruction of the property arose from one or both of two causes.

" First, either from the expansion of the liquor when exposed to the ordinary shaking and temperature, incident to its transportation, and the insufficiency of the package to repel such incidental exposure. And second, that the breakage was the result induced by the defect of the willow basket containing the glass enclosure, that but for the defective condition of the basket the breakage would not have occurred. Either of these positions, if made out by the evidence, would show contributing negligence, and would be an ample defence if the injury occurred during the transportation of the package, or within the time it should reasonably, under all the circumstances, have been delivered, and not after unreasonable delay and upon a concurring cause incident to that delay, and without which it would not have occurred.

" Here we will say that the hauling to the office of the company, for the purpose of arranging for delivery, was not in itself unreasonable delay, although in such carriage the wagon passed the house of the consignee. Nor on the other hand can we say, as a matter of law, that the hauling it to such room, and permitting it to remain there several hours without delivery or notice of arrival, is reasonable diligence. This is a question for you. That defendants would have a right, taking their packages out of trains at a point remote from their receiving-house, first to remove them to some general room before final distributing delivery, is undoubted.

" Whether in this case permitting the demijohn to remain in warehouse was or was not, under all the circumstances, reasonable diligence, is for you."

The following are points of the defendants, and their answers :—

2. If this injury to the property in dispute resulted from the insufficiency of the vessel to contain the liquors shipped, the plaintiff cannot recover.

[American Union Express Co. *v.* Robinson.]

Answer: " Unless the injury occurred after the time within which the package should reasonably have been delivered, and was induced by a cause incident to the delay, point affirmed, otherwise negatived."

3. Under the evidence in this case, the delay in delivery of the demijohn was not unreasonable.

Answer: " Whether reasonable or unreasonable, under all the circumstances, is a question for the jury."

4. After the delivery of the demijohn in the office of the defendants in good order, the defendants, if liable, are liable as warehousemen, and not as common carriers.

Answer: " If left in the warehouse for the convenience of the carrier, in transit to delivery, the point is answered in the negative."

The verdict was for the plaintiff for $30.

The defendants took a writ of error. They assigned for error the rejection of their offer of evidence, the answers to their points, and the part of the charge in brackets.

*E. S. Golden* (with whom was *F. Mechling*), for plaintiffs in error.—An express company is nothing more nor less than a common carrier, and is not to be held to a personal delivery of goods intrusted to its charge: railroad or steamboat companies are not charged with such duty. But if express companies are held to a higher rule, such rule may be varied by the course of business of defendant, which course of business shippers are presumed to know: Redfield on Railways 294, 295, 296; St. John *v.* Vansantvoor, 25 Wend. 660, s. c. 6 Hill 157; Gibson *v.* Culver, 17 Wend. 305.

*J. Gilpin*, for defendants in error.—The general rule is that common carriers of goods are bound to deliver their goods in safety personally, *i. e.* at the residence or place of business of the consignee, within a reasonable time after they are shipped. A carrier by water has an *exception* in his favor, viz. he may deliver on the wharf and give the consignee notice of the arrival of the goods. When railroads were established an exception was allowed from necessity in their favor. They were allowed to deliver at a fixed place, depot or warehouse, &c. But express companies have never been held to be within this exception: they originated to supply this defective delivery by railroads. They do not carry only upon railroad cars, but use wagons also, to complete their delivery: Redfield on Railways, sec. 127; Baldwin *v.* Am. Express Co., 23 Illinois 197; s. c. Id. 154. They must deliver their goods as land carriers at the place of business of the consignees, as early as practicable after arrival, and within the usual business hours: Marshall *v.* American Express Co., 7 Wisconsin 1; Shenk *v.* Propeller Co., 10 P. F. Smith 109.

[American Union Express Co. v. Robinson.]

The opinion of the court was delivered, November 14th 1872, by

READ, J.—The subject of the duties and liabilities of express companies has been very fully discussed, by Judge Redfield in his 2d volume of the Law of Railways, pages 15, &c., and in his treatise on the law of carriers of goods and passengers, chapter 5, page 47, and chapter 4, page 31. At section 50, page 38 of this last work, the learned author says; "One of the distinctive characteristics of this mode of transportation is that the companies, whether their line is by land or by water, or partly of each, undertake to deliver to the consignees in the same manner all common carriers by land did before railways came into general use; it being now well established, that in the ordinary railway transportation of goods by common carriers of goods, there is no obligation after the goods reach their appointed destination, but to put them safely in warehouse. It was mainly to remedy this defect in railway transportation of parcels of great value in small compass, that express companies were first instituted in America. That these companies are to be held ordinarily to personal delivery, has been so often decided as scarcely to require the citation of cases." The court were therefore right in saying : "Further than this, as to express company, we think the sound rule to be a personal delivery either to residence or place of business of the consignee." In fact any other rule would be destructive of the business of express companies who receive a larger compensation, because they contract for a personal delivery of goods intrusted to them as common carriers. The charge of the court, as to the delay, its reasonableness or unreasonableness, was perfectly proper, as also their answers to the defendant's point. We could not say the rejection of the evidence of the rules and regulations, as no copy of them was attached to the offer, was wrong, and it appeared on the argument they were the rules and regulations adopted by the company for the government of its members and employees.

Judgment affirmed.